SCOTT CURTIS )

)

v. )                    1:06-cv-140\1:03-cr-73

)                    *Edgar*

UNITED STATES OF AMERICA )

## MEMORANDUM

The defendant, Scott Curtis ("Curtis"), has filed a motion and two amendments to vacate,

set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Court File No.1, 5, 17]. For the

reasons which follow, the Court has determined a hearing is not necessary and concludes that the

§ 2255 motion lacks merit and will be **DENIED**. Curtis is not entitled to relief under § 2255.

### I.    Non-Dispositive Motions

Curtis filed two identical motions to amend [Court File No. 5, 17]. The Court will **DENY**

the second motion to amend since it is duplicative [Court File No. 17]. Curtis' motion to supplement

the record is **GRANTED** [Court File No. 21]. Since Curtis is not entitled to relief on his § 2255

motion, his motion for the court to grant the relief requested will be **DENIED** [Court File No. 22].

### II.    Procedural Background

On March 25, 2003, a United States grand jury sitting for the Eastern District of Tennessee,

Chattanooga Division, returned a six-count indictment charging William Curtis, Patricia McCurry,

Patrick McCurry, and Charles Dove, Jr., with various drug trafficking offenses. On April 8, 2003,

a thirteen-count superseding indictment was filed which named six more individuals (one of which

was Curtis), added seven additional counts to the indictment, as well as forfeiture allegations. Curtis

was charged in Counts One, Two, Three, and Eleven of the Superseding Indictment with four counts

of various drug trafficking offenses. Curtis was charged in Count One with conspiracy to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). Count Two of the indictment charged that Curtis, Patricia McCurry, Patrick McCurry, and William Curtis, aided and abetted by each other, possessed with the intent to distribute in excess of 50 grams of methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and Title 18 U.S.C. § 2. Curtis was charged in Count Three, along with co-defendant William Curtis, with possession of a firearm in furtherance of the drug trafficking crimes reflected in Counts One and Two of the superseding indictment in violation of 18 U.S.C. §924(c). Count Eleven of the indictment charged Curtis with possessing with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On the day before the trial was to begin, Curtis, with the benefit of a plea agreement, pleaded guilty to Count One of the superseding indictment.

On December 1, 2003, Curtis was sentenced to the statutory mandatory minimum of 120 months imprisonment and a supervised release period of 5 years, and assessed a $100.00 special assessment. Curtis pursued a direct appeal from the judgment of conviction. The United States Court of Appeals for the Sixth Circuit affirmed Curtis's sentence and the Supreme Court of the United States denied certiorari on October 3, 2005. Curtis'§ 2255 motion was timely filed on or about June 22, 2006.

## III.    Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of

2

the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair

3

procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, Curtis cannot use a § 2255 motion to litigate the issues that should have been presented and decided on direct appeal unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is demonstrated, *United States v. Frady*, 456 U.S. 152, 167-68 (1982), or Curtis shows that he is actually innocent of the crime. *See Bousley v. United States*, 523 U.S. at 622. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

## IV. Facts

The following pertinent facts are taken from the PSR prepared by the United States Probation Office:

18. In early 2003, Bradley County, Tennessee Drug Task (DTF) officers and agents with the Drug Enforcement Administration (DEA) began an investigation of methamphetamine trafficking into the area by Patricia and Patrick McCurry. DTF had received information that Patricia McCurry was a major distributor of methamphetamine in Bradley County. Patricia McCurry used her husband, Patrick McCurry to make deliveries on her behalf. She also used customer Charles "Bobby" Dove to do some work for her, such as deliveries. During the course of the investigation, as participants were arrested and cooperated, several other individuals were found to be involved in the distribution of methamphetamine, including sources Mike Davis and William "Bill" Curtis, and David Conley. Mike Davis, the main

4

supplier to this group at one time, utilized Scott Curtis for assistance. Davis's main supplier was Lavonda Goforth, who used her husband (Chris) to make deliveries for her.

19.     At the onset of the investigation, DTF developed a Confidential Informant (CI) who then made two undercover controlled buys of methamphetamine from Patricia McCurry. (About the same time another CI made an undercover buy of methamphetamine from Bobby Dove.) Following the two undercover buys (amounts unknown), DEA agents served a federal search warrant at the home of Patricia and Patrick McCurry, Cook Road, on March 1, 2003. Present when agents entered the home were: Patricia McCurry, Patrick McCurry, Bill Curtis, and Scott Curtis. Recovered during the search were: 400 grams of methamphetamine, $1,000 in cash, a loaded Winchester shotgun, a Marlin .22 caliber rifle, police scanner, digital scales, and drug paraphernalia. The weapons were located in a bedroom closet while the drugs and drug related paraphernalia were located in the kitchen. (Agents later learned that the weapons were the property of another individual, not involved in the drug offense, who had brought his vehicle to the McCurry's home to be worked on my Patrick after it had broken down. The weapons were in the car and they were removed and placed in the bedroom closet for safe-keeping, where officers found them.) The vehicle driven by Bill Curtis was also searched at the McCurry's home. Inside the 1996 Pathfinder, officers located a loaded Inter-Arms .380 caliber semi-automatic handgun and a quantity of plastic bags. Patricia and Patrick McCurry both made voluntary statements at the time of their arrests.

20.     Also, on March 1, 2003, based upon the undercover drug buy made by a Confidential Informant, a state search warrant was executed at the home of Bobby Dove. Located in the residence was an eightball of methamphetamine and a small quantity of marijuana. Dove was arrested and made a voluntary statement.

21.     On March 1, 2003, the home of Bill Curtis in Bradley County was searched after officers obtained a state search warrant. Located at the residence was equipment and chemicals used to manufacture methamphetamine, including: muriatic acid, glassware, tubing, red phosphorus, Coleman fuel, coffee filters, and other equipment.      Agents found written instructions on how to make methamphetamine. A small quantity of marijuana was also located in the residence.

22.     On March 21, 2003, officers served a state search warrant at the home of Mike Davis in Bradley County, Tennessee. The search warrant was based upon CI information obtained during the investigation. At Davis's home, officers found a one-quarter ounce quantity of methamphetamine. Davis made a voluntary statement when arrested. He told officers that he dealt in large quantities of methamphetamine, and that his source (Lavonda Goforth) was in North Georgia. He agreed to cooperate and made a recorded phone call to Lavonda Goforth. During the call, Davis asked to purchase a pound of methamphetamine. Lavonda Goforth stated that she could

5

not get her hands on that much because her "boys were on spring break," but she would send her husband (Chris) with eight ounces. Chris Goforth later arrived at Davis' house. He first entered the house and spoke with Davis; he then returned to the vehicle for the drugs. Seated in the car was Bruce Mantooth, who did not exit the vehicle. Chris Goforth returned to the house where he delivered about eight ounces to Davis, and he was arrested. On Chris Goforth, officers found about 1 1/2 ounces of methamphetamine, $1,200 in cash, and a loaded .22 caliber North American Arms revolver. A search of Goforth's vehicle, produced 29 rounds of rifle ammunition, and a CCI brand .22 caliber round on the dashboard. There was also white powder from the methamphetamine bag (which had a hole in it) on the passenger's seat, where Bruce Mantooth had been seated. (Mantooth is charged in the Indictment; however, the government is dismissing charges against him, as the evidence does not show that he was involved in the drug distribution conspiracy.) Lavonda Goforth, later turned herself in. Their home was not searched.

23.     Davis agreed to place a call to Scott Curtis (who was present at the McCurry's when the home was searched), to set up a sale of methamphetamine. Davis called Scott Curtis and said that he had two ounces to sell. When Scott Curtis showed up at Davis' house to buy the methamphetamine, he was arrested. At that time, Scott Curtis agreed to cooperate, and he placed a call to David Conley, another source of methamphetamine, for the group. Scott Curtis told David Conley that he was going to pick up some methamphetamine, and asked "Could he get any for Conley?" Conley told him to "get all you can," and they agreed to meet about 45 minutes later. When Conley arrived to pick up the methamphetamine, he was arrested. In Conley's vehicle, officers found: a loaded Kel-Tec 9mm semiautomatic handgun, and a loaded .22 caliber North American Arms revolver. Conley gave a voluntary statement at the time of his arrest and agreed to cooperate, and provide information on a source of methamphetamine in Bradley County. However, this source turned out to be an already cooperating federal defendant, Matt Gee.

24.     Scott Curtis did not make any voluntary statements and also provided a poor proffer session with the government. To avoid any double counting, only the minimum amount (at least **500 grams**) of methamphetamine will be used for guideline calculations. Mr. Curtis will receive a downward role adjustment considering he only assisted in the delivery of the methamphetamine and did not act as an independent contractor. However, Mr. Curtis was aware of some of the firearms that were being used by coconspirators. Due to this fact, the specific offense characteristic for firearm possession will be applied.

PSR at 5-7.

At the December 1, 2003, sentencing hearing, the Court found that defendant's criminal

history category was I. Curtis' total offense level was 29. Curtis' offense level of 29, combined with his criminal history category of I, resulted in a sentencing range of 87 to 108 months imprisonment, but his effective guideline was a mandatory statutory 120 months. Curtis was sentenced to 120 months of imprisonment, to be followed by five (5) years of supervised release.

## V.    Analysis

Curtis's § 2255 motion to vacate and amendment  contains several claims [Court File No. 1, 5]. Curtis raises claims of ineffective assistance of counsel and prosecutorial misconduct, and challenges the government's failure to file a 5K1.1 motion, and requests expungement of the dismissed counts of the superseding indictment.

The Court will combine the ineffective assistance of counsel claims from the § 2255 motion and the amendment but address them separately as sub-claims. Then, the Court will analyze the remaining claims in Curtis's § 2255 motion in the order in which he presented them..

### *A.    Ineffective Assistance of Counsel*

Curtis submits several claims of ineffective assistance of counsel which the Court will address separately as sub-claims under the claim of ineffective assistance of counsel. To establish ineffective assistance of counsel Curtis must demonstrate, as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), two essential elements: (1) counsel's performance was deficient, *i.e.*, below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*,

7

474 U.S. 52, 58-59 (1985). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

    *1.*    *Unconstitutional Plea Agreement*

  First, Curtis complains that counsel was ineffective for advising him to sign an unconstitutional plea agreement because the plea agreement provided Curtis was pleading guilty to the superseding indictment, an indictment upon which he alleges he was never rearraigned. As explained below, this claim is simply inaccurate and is contradicted by the record in this case, as Curtis was *not* charged in the original indictment but was only added when the grand jury returned the superseding indictment (emphasis added). (Presentence Investigation Report ("PSR" p. 4, ¶ 1).

  The Court File clearly reflects Curtis was arraigned and released on bond following the return of the superseding indictment (Court File No. 68). Additionally, the transcript of the rearraignment proceedings reflects that the Court clarified that Curtis and the other co-defendants present at the rearraignment were pleading to Count 1 of the superseding indictment, and the Court asked, "[i]s there anybody that does not understand that?" To which there was no response. In addition, the transcript reflects that Curtis pleaded to Count 1 of the superseding indictment (Crim. Court File No. 223, pp.5, 20-22 Transcript).

  Thus, the transcript of Curtis' rearraignment, where he pleaded guilty pursuant to his written plea agreement that specifies he was pleading guilty to Count One of the Superseding Indictment, demonstrates he was rearraigned on the Superseding Indictment (Crim. Court File Nos. 125, 223). Accordingly, since Curtis has failed to demonstrate any deficiency or omission by counsel, this

8

claim provides no basis for relief.

          *2.    Booker Claim*

In his second ineffective assistance of counsel claim in his § 2255 motion, Curtis asserts counsel was deficient for failing to argue, on direct appeal, that his sentence violated *United States v. Booker*, 543 U.S. 220 (2005), which was decided after sentencing but while his case was pending on direct appeal.

In *Booker*, the Supreme Court concluded the segment of 18 U.S.C. § 3553 making application of the federal sentencing guidelines mandatory was unconstitutional. *Id.* at 245. Therefore, sentencing courts are to treat the guidelines as advisory. *Id.*

What prevents Curtis from qualifying for any relief under *Booker* is that the statute he was convicted of violating, 21 U.S.C. § 841(b), provides for a mandatory minimum sentence of ten years imprisonment. It is important to note, that this mandate is distinct from the mandatory provision of the Federal Sentencing Guidelines struck down in *Booker*. Additionally, the Sixth Circuit has concluded *Booker's* invalidation of the Sentencing Guideline's mandatory provision had no bearing on non-Guideline statutory minimums. *United States v. Franklin*, 499 F.3d 578, 585 (6th Cir. 2007) ("Although *Booker* gave substantial discretion to the sentencing court to impose sentences below a mandatory maximum, nothing in *Booker* allows the court to negate the imposition of a mandatory minimum sentence."); *United States v. Smith*, 419 F.3d 521, 531-32 (6th Cir. 2005) (*Booker* does not apply where defendant was sentenced to statutory mandatory minimum), *cert. denied*, 546 U.S. 1096 (2006). Thus, *Booker* has no impact on Curtis' statutory mandatory minimum sentence and he is not entitled to any relief on this claim.

          *3.    Failure to Correct Presentence Investigation Report ("PSR")*

9

In his amendment to his § 2255 motion, Curtis raises three more claims of ineffective assistance of counsel. First, he claims counsel failed to correct the PSR report and "bring to the district's [sic] courts [sic] attention Amendment 640 to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(a)(3) which came into effect November 1, 2002 [sic] based on the fact that petitioner was granted a reduction under § 3B1.2(b) pursuant to U.S.S.G." [Court File No. 5].

On November 1, 2002, Amendment 640 to § 2D1.1(a)(3) became effective. Amendment 640 provides in pertinent part: "Section 2D1.1(a)(3) is amended by striking 'below' and inserting 'except that if the defendant receives an adjustment under § 3B1.2 (Mitigating Role), the base offense level under this subsection shall not be more than level 30." Prior to this amendment, there was no cap in place. Since Curtis was sentenced in 2003 and he received an adjustment for his mitigating role, this cap was applicable.

The government concedes Curtis' base offense level of 32 was incorrectly calculated because the limitation specified in § 2D1.1(a)(3), which provides for a capped base offense level of 30 when a mitigating role adjustment pursuant to U.S.S.G. 3B1.2 is applied, was not applied in Curtis' case even though he did receive the benefit of a mitigating role adjustment. Thus, the government agrees there was sentencing calculation error but disputes that there was ineffective assistance of counsel, arguing Curtis was not prejudiced by this error in calculation of his Guideline range because, regardless of whether his offense level 30 or 32, his sentence would have been the same since he was sentenced to a statutory mandatory minimum sentence of 120 months.

Petitioner is correct in that his base offense level should have been calculated at 30. However, as the government argues, even if the amendment had been applied, it would not have altered Curtis' sentence because he was sentenced under the ten year mandatory minimum and

10

would have received the ten years regardless of his guideline range. Contrary to Curtis' argument, the ten-year mandatory minimum is based on the statute, 21 U.S.C. § 841(b)(1)(A), not the guidelines. Curtis pleaded guilty to conspiracy to distribute in excess of five hundred grams of a mixture and substance containing methamphetamine (Crim. Court File No. 125). The minimum term of imprisonment for conspiracy to distribute in excess of five hundred grams of a mixture and substance containing methamphetamine—Count One of the Superseding Indictment to which Curtis pleaded guilty—is ten years. *See* 21 U.S.C. § 841(b)(1)(A). Consequently, regardless of Curtis' offense level, his minimum sentence would be ten years. Thus, this sentencing calculation error did not prejudice Curtis and therefore, he has not met the second prong of the *Strickland* test. Accordingly, resentencing is not necessary and relief is not warranted.

### 4. *Mens Rea*

Curtis contends counsel was ineffective for failing to challenge Count One of the indictment because it does not allege a federal offense. According to Curtis, the indictment fails to alleged the *mens rea* element of 21 U.S.C. § 846, *i.e.*, "'Knowingly, Willfully, and Intentionally.' Combine, Conspire, Confederate and agree." [Court File No. 5, p. 2].

Initially the Court observes that, contrary to Curtis' contention, the plain language of 21 U.S.C. § 846 imposes no *mens rea* requirement. Title 21 U.S.C. § 846 defines attempt and conspiracy as follows:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846. Title 21 U.S.C. § 841(a), however, does impose a *mens rea* requirement and defines unlawful acts as follows:

11

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally- -
>
> (1)    to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

21 U.S.C. § 841(a)(1). Thus, the court presumes Curtis meant to reference 21 U.S.C. § 841(a). However, such an assertion is inaccurate because the Superseding Indictment properly alleges the *mens rea* by tracking the language of the statute.

Count One of the Superseding Indictment charges, in relevant part, that Curtis and his co-defendants "did combine, conspire, confederate and agree to *knowingly, intentionally,* and without authority violate Title 21, United States Code, Sections 841(a)(1)(A) . . ." [Crim. Court File No. 40 (emphasis added)]. This language tracks the language of 21 U.S.C. § 841(a) and adequately charges the essential elements of a substantive violation under 21 U.S.C. § 841(a).

Since Count One of the Superseding Indictment charges a conspiracy to violate § 841(a), and because it charges that Curtis knowingly, intentionally, and without authority conspired to distribute in excess of 500 grams of a substance containing methamphetamine, the conspiracy count properly set forth the essential element of the offense charged and counsel was not deficient for failing to raise a frivolous objection. Thus, this claim fails on the merits.

### 5.    *Amendment of Indictment*

Curtis claims counsel was ineffective when he failed to object to the Court's improper amendment of his indictment during his guilty plea. Curtis contends "the district court included element's [sic] not considered and decided by the grand jury and this Amendment denied the petitioner his 5th Amendment right." According to Curtis, the Court should conclude his guilty plea is void to remedy the Court's alleged unconstitutional conduct of amending the indictment.

12

Curtis failed to provide any supporting facts to support his claim that the Court unconstitutionally amended the Superseding Indictment during his rearraignment. Specifically, Curtis does not identify the "element's" [sic] to which he is referring and since the Court, contrary to his allegation, did not amend the indictment, it is unable to discern exactly to what he is referring. Hence, he has inadequately pled this claim under Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts, which requires claims be plead with factual specificity. Curtis' claim fails to "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts. Curtis failed to provide any supporting facts to his claim that counsel was ineffective for failing to object to the Court's amendment of the Superseding Indictment. Thus Curtis' claim will be dismissed for failing to set forth in summary form the facts supporting this claim. Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts.

Nevertheless, for the sake of discussion, the Court will analyze the claim based on the government's interpretation of the claim. The government assumes Curtis is alleging the Court added an element to the conspiracy charge during its Rule 11 colloquy. Specifically, the government assumes Curtis is objecting to the Court advising him that the United States would have to prove, as an element, that he "knowingly and *voluntarily* entered into that conspiracy." whereas the indictment charged that Curtis "knowingly and *intentionally*" conspired with his co-defendants [Crim. Court File No. 223].

The essential purpose of an indictment is to give the defendant notice of the charge so he can defend or plead his case adequately. The Court did not amend the indictment. The Court merely

13

used the word voluntarily and described intentionally. Although the Court merely used the word voluntarily, and did not use the word intentionally, the Court explained, "[i]n other words, this was not an accident or mistake on your part, that you knew what you were doing at the time, that you knew what the object of the conspiracy was, and you, as I say, did not act out of any accident or mistake." (Crim. Court File No.223, p. 22-23). Thus, the Court defined intentionally, rather than using the specific word, which is inconsequential to Curtis' conviction or sentence, and does not amount to amending the indictment. Moreover, there is no legal distinction between the charge in the indictment of "intentionally," the term used in 21 U.S.C. § 841(a), and the Court's use of the term "voluntarily." Indeed, one of the definitions of voluntary is intentional. *Webster's Ninth New Collegiate Dictionary*, p. 1322 (1986). Black's Law Dictionary defines voluntarily as "[d]one by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion." *Black's Law Dictionary*, 1412 (5th Edition, 1979). Consequently, counsel was not ineffective for failing to raise such a frivolous objection and Curtis is not entitled to relief on this claim.

Accordingly, Curtis has not demonstrated that he received ineffective assistance of counsel in any of these instances, thus, he is not entitled to relief on any of his ineffective assistance of counsel claims [Court File No. 1, 5].

## *B. Prosecutorial Misconduct*

Curtis claims the Assistant United States Attorney engaged in outrageous prosecutorial misconduct in violation of his Due Process rights by using statements he made in pre-indictment de-briefings against him at sentencing, which allegedly prevented him from receiving the benefit of the safety valve. Specifically, Curtis contends it was outrageous government conduct to have Detective

14

Brumley testify Curtis was untruthful during his debriefing because it violated paragraph five of the plea agreement. In effect, Curtis, who does not deny he was untruthful during his proffer sessions, is arguing that regardless of the fact that he breached the plea agreement with his untruthfulness, he was still entitled to specific performance of the plea agreement.

As the sentencing transcript reflects, Curtis cooperated immediately with the government and his cooperation directly led to the arrest of Conley, who was a much larger player in the conspiracy than Curtis. Conley later pleaded guilty to a conspiracy and a firearm count. However, Curtis was not truthful in providing the government all information he possessed about the conspiracy.

Paragraph three of the plea agreement provided that Curtis agreed to be "completely forthright and truthful with all law enforcement agents, . . .personnel of the United States Attorney's office. . . .[and] before a federal grand jury, at any trial, or any other time or proceeding if called upon by the United States to do so. Paragraph five prohibits the government from using any statement, testimony, or any evidence developed from Curtis against him unless the agreement became void due to violation of any of its terms by Curtis (Plea Agreement). That is exactly what happened here. Curtis violated the terms of the plea agreement when he gave untruthful proffers to the government.

This Court conducted an evidentiary hearing wherein Detective Duff Brumley, a Cleveland Police Officer who participated in the proffer sessions with Curtis, testified Curtis first stated he was involved in the distribution of small amounts of methamphetamine—eight balls and grams—and then changed it to an ounce or two and subsequently changed his story and said he was involved in the distribution of three or four ounces (Crim. Court File No. 221, p. 20-21). Detective Brumley's investigation, however, revealed that Curtis was involved in possessing with intent to distribute

15

multiple pounds. Specifically, co-conspirator David Conley ("Conley") told Detective Brumley they distributed multiple pounds of methamphetamine and that Conley had stored multiple pounds of methamphetamine in buckets in the woods behind Curtis' house with Curtis' knowledge (Crim. Court File No. 221, p. 21). Based on this evidence, the Court concluded Curtis was untruthful and that he violated the plea agreement, thus, the government was permitted to use his proffer statements.

In summary, during the judgment proceedings, the prosecutor informed the Court that Curtis had a hard time telling the truth from the very beginning and Detective Brumley testified in support of the government's position. The government argued, because he was untruthful, they were allowed to use Curtis' statements, testimony, or any evidence developed from him. After hearing from Detective Brumley, the Court concluded Curtis was not truthful in providing the government with all information he had regarding his case, and thus, since the Court concluded he breached the plea agreement by not being truthful, Curtis' proffered statements were not protected by the plea agreement.

The government presented uncontroverted proof that Curtis was untruthful during his first two proffer sessions. Accordingly, since Curtis breached the plea agreement, the government did not engage in any misconduct in presenting the testimony of Detective Brumley as to Curtis' proffered statements and no relief is warranted.

### C. *Expungement of Dismissed Counts*

Curtis contends the Court should expunge, from his criminal record, the counts of the superseding indictment that were dismissed pursuant to this plea agreement. Although "[i]t is within the inherent equitable powers of a federal court to order the expungement of a record in an

16

appropriate case[,]" *United States v. Doe*, 556 F.2d 391, 393 (6th Cir. 1977), it does not appear that this is the proper proceeding to raise such a request since it does not amount to a challenge to Curtis' criminal conviction or sentence. *See* 28 U.S.C. § 2255.

Although the Sixth Circuit has "not yet posited a standard for determining which cases are 'appropriate'" [for expungement], it has noted that other circuits "have held that the expungement power is narrow and appropriately used only in extreme circumstances." *United States v. Robinson*, 79 F.3d 1149, 1996 WL 107129, *1 (6th Cir. March 8, 1996) (unpublished decision). The Court further observed that applying that standard, "federal courts have most readily invoked the expungement power with respect to illegal convictions, convictions under statutes later deemed unconstitutional, and convictions obtained through governmental misconduct. Thus, assuming for the sake of discussion that this claim is properly before the Court, Curtis would not be entitled to relief because he has not stated any extraordinary circumstances which would warrant the expungement of the records of the dismissed charges.

The fact that the government dismissed certain counts against Curtis does not constitute a concession of innocence by the government. Thus, since the government did not concede Curtis' innocence, and Curtis does not allege the counts that were dismissed were invalid or provide any reason for their expungement, it does not appear that he is entitled to any relief on this claim. *See United States v. Flagg*, 178 F.Supp.2d 903, (S.D.Ohio, 2001) (expungement of arrest records denied where government did not concede innocence). Thus, even if this claim is properly before the Court, it does not appear that Curtis is entitled to the requested relief.

D. *5K1.1 Motion*

17

Curtis complains that, although he cooperated immediately with the government and assisted with the arrest of a co-conspirator, David Conley, the government refused to file a 5K1.1 motion. Curtis argues the Court has the authority to reduce his sentence based upon his alleged substantial assistance under the authority of *United States v. Booker*, 543 U.S. 220 (2005).

There is no legal basis for this claim. The government may request a downward departure in sentencing for offenders who provide "substantial assistance" in investigating or prosecuting other criminals. United States Sentencing Guidelines § 5K1.1. A downward departure for substantial assistance may only be granted upon motion by the government. *Wade v. United States*, 504 U.S. 181, 185 (1992). A federal district court does have the authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if it finds that the refusal was based on an unconstitutional motive, for example, a defendant's race or religion. *Id.* at 186. Such is not the case with Curtis. Curtis does not assert the government's failure to file a 5K1.1 motion was based on an unconstitutional motive, because, indeed it was not. The government concluded, as did the Court, that Curtis was untruthful and such is a legitimate reason to refuse to file a 5K1.1 motion.

In summary, Curtis was subjected to the statutory mandatory minimum sentence, thus, his substantial assistance would warrant a reduction only if the United States filed a motion pursuant to 18 U.S.C. § 3553(e). Because the government did not refuse to file a 5K1.1 motion for unconstitutional reasons, the Court does not have the authority to grant any relief on this claim. Additionally, even assuming *Booker* permits the Court to reduce Curtis' sentence based on his substantial assistance, the Court would not be inclined to do so because, as it previously determined,

Curtis was not completely truthful with the government during his first two proffer sessions. Thus,

18

no relief is warranted on this claim.

### E. Preservation of Appendi/Blakely/Booker Argument

Curtis states he wishes to preserve an objection based upon the decisions in *Apprendi/Blakely/Booker* in light of a pending issue before the United States Supreme Court as to the retroactivity of these decision on collateral review *i.e.*, *Burton v. Waddington,* 547 U.S. 1178 (2006), *vacated and remanded sub nom., Burton v. Stewart,* 549 U.S. 147 (2007). Although the Supreme Court granted certiorari in that case to determine whether their decision in *Blakely v. Washington*, 542 U.S. 296 (2004) announced a new rule and, if so, whether it applies retroactively on collateral review, the Court did not answer the question because the state prisoner failed to comply with the gatekeeping requirements of 28 U.S.C. § 2244(b). *Burton v. Steward,* 549 U.S. 147 (2007). Thus, the Court remanded the case with instructions for the Court of Appeals to direct the District Court to dismiss the habeas corpus application for lack of jurisdiction. Consequently, preservation of this claim based on the Supreme Court's decision in *Burton* is not warranted. Moreover, since Curtis' sentence was determined by the statutory minimum and not impacted by the Supreme Court's amendment to the Guidelines, even if the Supreme Court eventually concludes these cases are retroactively applicable on collateral review, such a decision will not benefit Curtis.

### F. Amended Judgment

Curtis' final claim is that he should be re-sentenced based on an offense level of 28 because the Amended Judgment added a third point for acceptance of responsibility but failed to change his offense level from 29 to 28. Curtis' assertion is incorrect. Curtis' Presentence Investigation Report accurately reflected he received a three level reduction for acceptance of responsibility and a total offense level of 29. The amended judgment only reflects a change in the statement of reasons due

19

to a clerical error. The original statement of reasons incorrectly reflected the third point of acceptance of responsibility was not applicable, and the amended statement correctly reflects that Curtis did receive a three level reduction for acceptance of responsibility. Consequently, Curtis' contention is incorrect and he is not entitled to any relief on this claim.

In addition, Curtis asserts the Bureau of Prisons has not followed the Court's recommendation and provided him with the recommended 500 hour substance abuse treatment program "because of the firearm enhancement." [Court File No. 2, p. 16]. Curtis requests the Court to Order the Bureau of Prisons to provide the 500 hour substance abuse treatment program.[1] This claim does not allege an error in either the conviction or the sentence and fails to state a basis for relief.

Furthermore, the Court notes that the Bureau of Prisons has an administrative remedy procedure which allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement[,]" 28 C.F.R. § 542.10, and it does not appear that Curtis has exhausted his administrative remedies. *See also* 28 C.F.R. §§ 542.13 to 542.15. Curtis must complete the four-step administrative process beginning with: (1) attempted informal resolution with prison staff. If the prisoner achieves no satisfaction informally, (2) he must file a written complaint with the warden, (3) followed by an appeal to the regional director of the Federal Bureau of Prisons. Finally,

---

[1]     The Court observes that Curtis' supplement reflects he completed the 40 hour Drug Abuse Education Program on March 15, 2004; completed the Victim Impact Panel on three occasions; completed the 12 Step Program twice; and continues to participate in the AA/NA Group on a regular basis. The Court commends Curtis, as it appears that he has exhibited exemplary behavior while in prison and has taken advantage of several self-improvement programs. Although the court hopes Curtis remains a model prisoner and continues to take advantage of the available programs, the Court has no jurisdiction under § 2255 to modify a lawful sentence based upon Curtis's good behavior.

if the prisoner has received no satisfaction, (4) he may appeal to the office of the General Counsel. After exhausting his administrative remedies, if he is not satisfied with the Bureau of Prisons' resolution of the claim, Curtis may then file a petition pursuant to 28 U.S.C. § 2241. *See* 28 CFR §§ 542.10-16.

Accordingly, Curtis is not entitled to any relief regarding the 500 hour substance abuse treatment program.

## VI.     Conclusion

For the reasons set forth above, the Court concludes Curtis is not entitled to an evidentiary hearing or any relief under 28 U.S.C. § 2255 as his conviction and sentence are not in violation of the Constitution or laws of the United States. A separate judgment will enter **DENYING** Curtis' § 2255 motion [Court File No. 1].

An appropriate judgment will enter.


_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE

21